WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| S Development Company dba Bell Tower Apartments; and Presidio North LP,<br><br>Plaintiffs,<br><br>v.<br><br>Commercial Industrial Building Owners Alliance, Incorporated, a California corporation dba CIBA Insurance Services; Lexington Insurance Company, a Delaware corporation; Ironshore Insurance Limited, a foreign entity; Westchester Fire Insurance Company, a Pennsylvania corporation; Steadfast Insurance Company, a Delaware corporation; Endurance American Specialty Insurance Company, a New York corporation; Lancashire Insurance Company (UK) Limited, a foreign entity; Homeland Insurance Company of New York, a New York corporation; Landmark American Insurance Company, a Georgia company; et al,<br><br>Defendants. | No. CV-13-00911-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant Ironshore Insurance Ltd.'s Motion to Compel Arbitration and Stay Proceedings. (Doc. 59.) For the following reasons, the Motion is granted.

## BACKGROUND

Plaintiffs S Development Company, d/b/a Bell Tower Apartments, and Presidio North L.P. (collectively "Plaintiffs") own apartment buildings in Phoenix, Arizona. (Doc. 1, ¶¶ 1–2.) These properties include the Presidio North Apartments and the Bell Tower

Apartments. In 2006, Plaintiffs joined Defendant Commercial Industrial Building Owners Alliance, Incorporated, d/b/a CIBA Insurance Services ("CIBA"), a California-based insurance purchasing group that negotiates with insurance companies to issue property and liability insurance policies to similarly-situated entities. (*Id.* at ¶¶ 18, 21; Doc. 70 at 2–3.) CIBA procures insurance for the members of the purchasing group from a number of insurance companies. The named insured under the policies is CIBA and any associate of CIBA to whom evidence or a certificate of insurance has been issued. While CIBA itself issues Evidences of Insurance for the insured, the actual insurance policies are provided by the various insurance companies, each covering a certain percentage of the insured's liability. (Doc. 66-1 at 1; Doc. 70 at 3.)

On March 4, 2008, CIBA issued Evidences of Property Insurance to Plaintiffs for coverage effective March 31, 2008 through March 31, 2009. (Doc. 66, Ex. 4.) The coverage for this time period was provided by a number of insurers that included Defendant Ironshore Insurance Ltd. ("Ironshore"), a Bermuda-based foreign insurer. On March 28, 2008, Ironshore issued a binding slip for its policy. (Doc. 70-2.) This slip included the terms of its policy, including both a New York choice of law provision and an arbitration clause. (*Id.* at 5.) On August 14, 2008, Ironshore executed the final version of the policy at issue in this Motion, featuring the same terms as appeared in the slip policy. (Doc. 70 at 3.) The policy provided 12.5% of a $30,000,000 excess liability policy, effective between March 31, 2008 and March 31, 2009. (*Id.*) As with any of the policies purchased by CIBA, the named insured on the Ironshore policy is CIBA itself and any CIBA associates who were issued an evidence or certificate of insurance. (*Id.*) The policy provides retroactive coverage beginning on March 31, 2008, and features both a New York choice of law provision and an arbitration clause. (*Id.*)

On or about May 2008 to November 2008, Plaintiffs discovered termite damage at the Presidio North Apartments. (Doc. 1, ¶ 34.) On or about November 2008, Plaintiffs tendered a claim for this damage to Defendants. (*Id.*, ¶ 36.) On or about November 2008, Plaintiffs discovered termite damage at the Bell Tower Apartments and timely tendered a

1  claim for that damage to Defendants. (*Id.*, ¶¶ 53, 55.)

2  Plaintiffs filed the present action and their amended complaint in Maricopa
3  County Superior Court against CIBA, Ironshore, and the other insurance companies,
4  seeking declaratory relief and alleging breach of contract and breach of the implied
5  covenant of good faith and fair dealing. (Doc. 1 at 15–28.) Two of the Defendants
6  removed the action to this Court. (*Id.* at 1–7.) Defendant Ironshore now moves to stay the
7  proceedings against them and compel arbitration, pursuant to the arbitration clause in the
8  Ironshore policy. (Doc. 59.)

9  **DISCUSSION**

10  Ironshore asserts that this case, or at least the case against it, is governed by the
11  Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the
12  "Convention") within the Federal Arbitration Act ("FAA"). 9 U.S.C. § 201 *et seq*. The
13  Convention governs "[a]n arbitration agreement or arbitral award arising out of a legal
14  relationship, whether contractual or not, which is considered as commercial." 9 U.S.C. §
15  202. To determine whether to enforce an arbitration agreement under the Convention, a
16  court must address four factors. These factors "require that (1) there is an agreement in
17  writing within the meaning of the Convention; (2) the agreement provides for arbitration
18  in the territory of a signatory of the Convention; (3) the agreement arises out of a legal
19  relationship, whether contractual or not, which is considered commercial; and (4) a party
20  to the agreement is not an American citizen, or that the commercial relationship has some
21  reasonable relation with one or more foreign states." *Balen v. Holland Am. Line Inc.*, 583
22  F.3d 647, 654–55 (9th Cir. 2009) (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1294–
23  95 (11th Cir. 2005)). Here, each of these four factors is met. The arbitration agreement is
24  in writing, it provides for arbitration in the United Kingdom, a signatory of the
25  Convention, it arises from a commercial legal arrangement, and Ironshore is not an
26  American citizen.

27  Plaintiffs do not address whether the agreement is governed by the Convention or
28  whether these four factors are met. Instead, Plaintiffs argue that the agreement should not

be enforced because (1) they did not receive notice of the arbitration clause and thus did not agree to be bound by it; (2) Arizona law prohibits Ironshore from enforcing the clause; and (3) enforcement of the clause is unconscionable. The Court will address each of these arguments in turn.

**I.      Whether the Clause is Unenforceable Due to Lack of Notice to Plaintiffs**

First, Plaintiffs argue that the arbitration clause should not be enforced because they did not receive notice of the clause and thus did not agree to be bound by it. They note that the Evidences of Insurance they received for the March 31, 2008 to March 31, 2009 coverage period mentioned neither Ironshore nor the clause, that they attempted to obtain copies of the CIBA insurance plans and were unable to do so, and that the Ironshore policy was not formally executed until after the coverage period began. (Doc. 66 at 3–6.) None of these arguments are persuasive.

The Evidences of Insurance Plaintiffs received for the relevant coverage period do not mention Ironshore or any of the other insurance policies actually providing the CIBA coverage, but instead direct the insured to "[r]efer to CIBA master policies for complete terms, conditions, limitations and exclusions." (Doc. 66–5.) Plaintiffs claim they did not realize that CIBA insurance included a number of policies instead of a single plan until after they initiated this action. (Doc. 66 at 2.) However, Plaintiff offers no explanation why it should not be bound by CIBA's knowledge in the purchase of the policies that provided its total coverage package.  To the extent that CIBA created Plaintiff's coverage by contracting with various insurers, Plaintiff is not now entitled to claim that because, as CIBA's associate, it was not familiar with the nuance of each policy that CIBA procured, it is entitled to claim the coverage of each policy without being subject to the provisions pursuant to which that coverage is offered.   Similarly, Plaintiffs describe their difficulty obtaining copies of the master insurance policies through their insurance agent and CIBA, but they do not allege they actually requested any information from Ironshore or suggest how CIBA and the insurance agent's failure can or should be imputed to Ironshore.

1   Further, while Ironshore's policy was not formally executed until August 14, 2008, after the relevant coverage period had begun on March 31, 2008, the policy was executed before the Plaintiffs discovered the loss and filed the claims at issue in this case in November 2008. It is also uncontested that Ironshore executed its slip policy before the coverage period began and that the slip policy contained the arbitration clause and would have provided coverage had there been a covered event prior to the issuance of the formal policy. Thus, the Court finds that the Ironshore policy and its arbitration clause were in effect prior to the loss.[1]

**II.  Whether Enforcement of the Clause is Barred by Arizona Law**

Next, Plaintiffs suggest that enforcement of the clause would violate Arizona law. Plaintiffs first suggest that enforcement is barred by Ariz. Rev. Stat. § 20-402 because Ironshore was not authorized to issue insurance in Arizona during the relevant period of coverage. However, Ironshore is plainly excluded from the prohibition in that statute, which states that "[t]he transaction of business in violation of [the statute] by an insurer does not impair the validity of any contract of the insurer and does not prevent the insurer from defending any action at law or suit in equity in any court of the state." Ariz. Rev. Stat. § 20-402. Here, Plaintiffs brought this action against Ironshore and Ironshore is defending itself in that action, as is permitted by the statute.

Next, Plaintiffs allege that Ironshore's New York choice of law provision is void as it violates Ariz. Rev. Stat. § 20-115, which states that "no policy delivered or issued for delivery in this state" and covering a subject located in the state shall be subject to a condition requiring the application of the law of any other state. Ariz. Rev. Stat. § 20-115(A). Here, the policy was delivered and issued to CIBA in California. In the alternative, were this section to void the choice of law provision, the statute specifies that "such voidance shall not affect the validity of the other provisions of the policy." Ariz.

---

[1] Further, Plaintiffs may be estopped from arguing that they did not agree to the arbitration clause while seeking to enforce the Ironshore policy. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045–46 (9th Cir. 2009) (discussing when equitable estoppel may "preclude[] a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes") (citations omitted).

- 5 -

1 Rev. Stat. § 20-115(B). Thus, it would not impact the validity of the arbitration clause.

2 Additionally, Plaintiffs contend that enforcement of the choice of law and
3 arbitration clauses would violate their reasonable expectations. The doctrine of
4 reasonable expectations can bar enforcement of a term in a standardized insurance
5 contract in a limited set of circumstances. *Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz.
6 266, 272, 742 P.2d 277, 283 (1987). First, the doctrine may apply "[w]here the contract
7 terms, although not ambiguous to the court, cannot be understood by the reasonably
8 intelligent consumer who might check on his or her rights." *Id.* Here, Plaintiffs do not
9 allege that the relevant contract terms are ambiguous. Second, the doctrine may apply
10 "[w]here the insured did not receive full and adequate notice of the term in question, and
11 the provision is either unusual or unexpected, or one that emasculates apparent
12 coverage." *Id.* at 372. While Plaintiffs do allege that they did not receive full notice of the
13 terms, that assertion is rejected for the reasons set forth above. Further they do not
14 provide facts or authority to suggest that the provisions are unusual or significantly alter
15 coverage. Finally, reasonable expectations may apply when some activity that is
16 reasonably attributable to the insurer "would create an objective impression of coverage
17 in the mind of a reasonable insured" or "has induced a particular insured reasonably to
18 believe that he has coverage, although such coverage is expressly and unambiguously
19 denied by the policy." *Id.* at 373. Plaintiffs allege no such activity. Therefore, the Court
20 finds that the reasonable expectations doctrine does not bar enforcement of the choice of
21 law and arbitration clauses.

22 **III. Whether the Clause is Unconscionable**

23 Lastly, Plaintiffs seem to allege that enforcement of the clause would be
24 unconscionable. They state that "compelling Plaintiffs to arbitrate this matter in London,
25 England would cause severe financial harm and be unduly oppressive." (Doc. 66 at 9.)
26 Plaintiffs also filed an affidavit from their President Pat Simone, which states that "[i]f
27 [Plaintiffs] were required to arbitrate their claims against Ironshore in London, England it
28 would cause severe financial harm." (Doc. 67 ¶ 19.) When "a party seeks to invalidate an

arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 92 (2000). Here, Plaintiffs provide no such evidence, and instead offer only the conclusory statement that arbitration in England would be prohibitively expensive. This is insufficient to bar enforcement of the clause. Therefore,

**IT IS ORDERED** that Defendant Ironshore's Motion to Compel Arbitration and Stay Proceedings (Doc. 59) is **granted**.

**IT IS FURTHER ORDERED** directing the parties' to jointly file a status report on or before **May 29, 2014, and every 90 days thereafter**, until the stay is lifted and/or the arbitration proceedings are resolved.

Dated this 27th day of February, 2014.

*G. Murray Snow*
G. Murray Snow
United States District Judge